IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America

v.                                          Case No. 1:20-cr-85-MLB

Lavazier Williams,

          Defendant.

_____/

**OPINION & ORDER**

    Defendant Lavazier Williams is charged with receiving a firearm at a time when he knew he was under a felony indictment for possession with intent to distribute marijuana, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D) (Count 1); possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count 2); and distributing a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C) (Count 3). (Dkt. 1.) Defendant Williams filed a motion to suppress statements, a motion for the production of the names and other identifying information of any confidential informants, and a motion to dismiss Count 1 of the indictment. (Dkts. 28; 29; 30.) The Magistrate Judge denied Defendant

Williams's motion for production of the names of confidential informants and recommends denying the motion to dismiss and the motion to suppress. (Dkt. 52.) Defendant Williams objects to these recommendations. (Dkt. 54.) The Court overrules Defendant Williams's objections and adopts the Magistrate Judge's report and recommendation ("R&R").

**I.   Background**

The Magistrate Judge held an evidentiary hearing on October 1, 2020, at which ATF Senior Special Agent Allan McLeod testified. (Dkt. 41.) The following facts are drawn from his testimony and the exhibit introduced at that hearing.

Defendant Williams was indicted on February 18, 2020. (Dkt. 1.) He was subsequently arrested on March 9, 2020 and transported to the Atlanta City Detention Center ("ACDC"), where he stayed overnight. (Dkt. 41 at 7, 9.) Defendant Williams was not questioned on March 9, nor did he ask for an attorney. (*Id.* at 8–10.) On March 10, 2020, Special Agent McLeod and ATF Special Agent James Nash transported Defendant Williams from ACDC to the federal courthouse for his initial appearance. (*Id.* at 10.) Agent McLeod informed Defendant Williams

that they were going to take him to the United States Marshals' facility and "explained the process" to him—that he would be assigned an attorney and would meet with a probation officer. (*Id.* at 11.) Defendant Williams was handcuffed, placed in the agents' vehicle, and driven for about seven or eight minutes to the courthouse. (*Id.* at 10–11, 23.)

Upon arrival at the courthouse parking deck, and while sitting in the parked vehicle, Agent McLeod told Defendant Williams that he would like to ask him some questions about the investigation, specifically about sources, firearms, and narcotics. (*Id.* at 13–14, 26.) Agent McLeod told Defendant Williams that he would also be willing to answer questions that Defendant Williams might have, and because it would be a back-and-forth question-and-answer, McLeod would have to read him *Miranda* rights from a card. (*Id.* at 13, 26.) Before Agent McLeod could read him his rights, Defendant Williams spoke for about 12 seconds, during which time he told the agent he did not have any big sources and was just a middleman. (Dkt. 41 at 13; Gov't Ex. 1 at 00:00–00:12.)

Agent McLeod acknowledged what Defendant said and explained, "before I ask you any actual questions about them, I am going to say that you have the right to remain silent, anything you say can be used against

3

you in a court of law, you have the right to consult with an attorney before questioning and to have one present during questioning. If you can't afford a lawyer, one will be appointed to represent you free of charge prior to any questioning." (Gov't Ex. 1 at 00:13–00:35.) Agent McLeod asked Defendant Williams if he understood his rights, and Defendant Williams replied, "yes, sir." (*Id.* at 00:36–00:37.) Agent McLeod then asked Defendant Williams if he was willing to waive his rights and talk. (*Id.* at 00:38–00:40.) Defendant Williams said something unintelligible, at which point the agent asked, "are you?" (*Id.* at 00:40–00:44.) The conversation was then briefly interrupted when someone approached the vehicle, seemingly inquiring about why it was parked there. (*Id.* at 00:44–01:07; Dkt. 41 at 18.) The agent then said, "Mr. Williams, are you willing to waive these rights and talk with us?" (Gov't Ex. 1 at 01:08–01:09.) Defendant Williams answered, "ah, yes. I just, I just want to like, like, get like how can I, I just really need help getting like a bond or something." (*Id.* at 01:10–01:16.) The agent explained the fact Defendant had been cooperative and had not tried to fight or flee would all go in his favor and that the only thing really going against him was a probation violation warrant—and that his attorney might be able to

handle that. (*Id.* at 01:17–01:42.) For the remainder of the conversation, Defendant Williams and the agents discussed facts related to the investigation as well as those that might impact whether Defendant Williams would get a bond. (*Id.* at 01:43–12:28.)

The agents did not present Defendant Williams with a written *Miranda* waiver form. (Dkt. 41 at 15.) There are no facts from the hearing to suggest the agents threatened Defendant Williams in any manner or that Defendant Williams was in any way incapacitated or did not understand what the agents told him. (*Id.* at 11–12, 16, 20–21, 27.) Defendant Williams never asked to stop the interview or for a lawyer, and neither of the agents made any promises to Defendant Williams about a bond or anything else. (*Id.* at 20–21.)

## II. Standard of Review

The district court must "conduct[] a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which [a party] specifically objects." *United States v. McIntosh*, 2019 WL 7184540, at *3 (N.D. Ga. Dec. 26, 2019); *see* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those portions of the [R&R] to which

5

objection is made."); *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (plain error review appropriate in absence of objection). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). After conducting the required review, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III.  Discussion

#### A.  Motion to Dismiss Count 1 of the Indictment

Count 1 of the indictment charges a violation of 18 U.S.C. § 922(n), which makes it a crime "for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (Dkt. 1 at 1.) Defendant Williams filed a motion to dismiss Count 1, arguing he was not "under indictment" on October 2, 2019, which is when the indictment

6

alleged that he received a firearm, and also that the statute is unconstitutionally vague and the rule of lenity favors his interpretation. (Dkts. 30; 45 at 2–7.)

### 1. Defendant Was Under Indictment

On October 5, 2018, Defendant Williams was charged in a three-count felony indictment in Superior Court in Fulton County with possession of marijuana with the intent to distribute, possession of marijuana in a drug-free commercial zone, and possession of a firearm during the commission of a felony. (Dkt. 47-1 at 6–8.) He entered a negotiated plea to those counts about two months later and was sentenced under Georgia's First Offender Act to seven years—the first two on probation and the remaining five suspended under the First Offender Act. (Dkt. 47-1.) The written judgment contained a provision stating, "it is the judgment of the Court that no judgment of guilt be imposed at this time but that further proceedings are deferred." (*Id.* at 4.) The judgment further provided that "[u]pon violation of the terms of probation[,] . . . the Court may enter an adjudication of guilt and proceed to sentence the Defendant to the maximum sentence as provided by law," or, in the alternative, "[u]pon fulfillment of the terms of this

7

sentence[,] . . . the Defendant shall stand discharged of said offense without court adjudication of guilt and shall be completely exonerated of guilt of said offense charged." (*Id.*)

The Magistrate Judge found that, because Defendant Williams was never adjudicated guilty of the crimes in Fulton County, the case was suspended while he served his time on probation. (Dkt. 52 at 7.) Accordingly, the Magistrate Judge found that Defendant Williams was under indictment in October 2019 and recommended that his motion to dismiss be denied. (*Id.*) Defendant Williams objects to this recommendation, maintaining he was not "under indictment" on October 2, 2019. (Dkt. 54 at 1.)

Federal law defines an "indictment" as "an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14). Defendant Williams argues that, at the time alleged in the federal indictment, he had pled guilty to the state crimes and was already more than a year into serving his sentence and, therefore, was no longer "under indictment" in state court. (Dkt. 45 at 3.) But as the Magistrate Judge explained, the entry of a guilty plea in a First Offender

8

Act case does not result in an adjudication of guilt. (Dkt. 52 at 8–9.) Rather, it begins the process of allowing a defendant to serve his sentence and postpones the determination of guilt until after the defendant has served the probationary period. *See Davis v. State,* 537 S.E.2d 663, 665 (Ga. 2000) ("Under the first offender statute, the case has, in effect, been suspended during the period of probation." (internal quotation marks omitted)). And because a First Offender Act defendant stands neither convicted nor discharged during the period of probation, the necessary implication is that he or she remains subject to the indictment—in terms of § 922(n), he is "under indictment." *See United States v. Bonds*, No. 2:16-CR-34, 2017 WL 2991804, at *3 (N.D. Ga. Mar. 10, 2017), adopted by 2017 WL 2991465 (N.D. Ga. July 13, 2017) ("The undersigned therefore finds that Defendant was 'under indictment' for purposes of 18 U.S.C. § 922(n) when he allegedly committed the federal firearms offense at issue here because he had not yet been adjudicated guilty on the charged state offense, nor had the charge been discharged or dismissed."). This conclusion is consistent with the language of Defendant Williams's judgment, which states that no judgment of guilt was imposed "at this time but that further proceedings are deferred." (Dkt. 47-1 at 4.)

9

Defendant Williams cites *United States v. Hill*, 210 F.3d 881 (8th Cir. 2000), in support of his motion to dismiss and in his objections to the R&R.  (Dkts. 45 at 3–4; 54 at 4–5.)  In *Hill*, the defendant pled guilty to a crime in Missouri.  State law provided that, at the expiration of the defendant's time on probation, the state court could fully discharge the defendant without a conviction or could sentence him if he violated the terms of his probation.  *Hill,* 210 F.3d at 883.  The Eighth Circuit noted that because the primary purpose of an indictment under Missouri law is to give general notice to the defendant of the charge against him, the purpose of the indictment was "satisfied" by the defendant pleading guilty.  *Id.* at 884.  The court held that the defendant was thus not "under indictment" for purposes of the Missouri charges.  Defendant Williams argues that *Hill* makes it clear that "a portion of a case can remain pending without the defendant remaining 'under indictment.'"  (Dkt. 54 at 4 (citing *Hill*, 210 F.3d at 884.))

The Magistrate Judge correctly noted there is no meaningful distinction between the Missouri statute at issue in *Hill*, Georgia's First Offender Act, and the state law the Tenth Circuit considered in *United States v. Saiz*, 797 F.3d. 853 (10th Cir. 2015). (Dkt. 52 at 11.)  In *Saiz*,

10

the Tenth Circuit disagreed with the Eighth Circuit's reasoning in *Hill*, explaining:

> Although it is true that an indictment's purpose is to inform a defendant of the charges against him, we find no support for the proposition that a defendant is no longer subject to an indictment after he pleads guilty and before he is adjudged guilty. To the extent that a conditional discharge puts off a finding of guilt, it simply prolongs the life of the indictment. A holding to the contrary would be incongruous with the requirement that charges are only dismissed when the defendant completes the probationary period, as well as the fact that the defendant is never convicted unless he violates the terms of release. If the indictment dissipated at the time of the guilty plea, there would be no more charges to dismiss and no chance of a future conviction. The statutory scheme exists precisely to give a defendant a chance to avoid a finding of guilt, while preserving the threat posed by the indictment until the completion of probation.

797 F.3d at 857 (internal quotation marks, citations, and footnotes omitted); *see also Bonds*, 2017 WL 2991804, at *4–5 (agreeing with the reasoning of *Saiz* and finding "the court's analysis in *Hill* unpersuasive"). The Court agrees with the Tenth Circuit, disagrees with Eighth Circuit, and finds that Defendant Williams was "under indictment" at the time of the federal gun offense.

### 2.  Section 922(n) is not Unconstitutionally Vague

Defendant Williams argues that, even if he were "under indictment," § 922(n) is unconstitutionally vague because no ordinary

11

person would understand that he or she is still "under indictment" years "or even decades after entering a guilty plea" under the First Offender Act. (Dkts. 45 at 6; 54 at 6.) "'Vagueness' is an outgrowth of the Fifth Amendment's Due Process Clause." *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010). "A criminal statute will violate due process if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* (internal quotation marks omitted). If the plain language of the statute "sets forth clearly perceived boundaries, [a court's] inquiry is ended." *Id.*

Section 922(n) makes it a crime "for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." And the statute explains that "an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14). Relying on the plain language of the statute, as well as the analysis in *Bonds*, the Magistrate

12

Judge found that § 922(n) is not unconstitutionally vague. (Dkt. 52 at 15); *see Bonds* 2017 WL 2991804, at *6 (explaining that an ordinary person would understand they were still under indictment after pleading guilty because "Georgia law provides that a guilty plea under the First Offender Act is not an adjudication of guilt or a conviction, and therefore the offense remains pending until . . . the charge is dismissed, or the court later adjudicates the defendant guilty").

Defendant Williams argues that the reasoning in *Bonds* is "flawed" because "it presumes that an ordinary person would be able to draw a number of legal conclusions that are anything but obvious." (Dkt. 54 at 7.) Specifically, Defendant Williams argues that a defendant must be able to draw the conclusion that, if there has been "no adjudication of guilt or conviction," then the offense must "remain pending," and, if the offense "remains pending," then he remains "under indictment until the charge is dismissed or an adjudication of guilty occur(s)." (*Id.*) But, contrary to Defendant Williams's contention, these are not legal conclusions that a person of ordinary intelligence would not have a "reasonable opportunity to understand." *Wayerski*, 624 F.3d at 1347. Rather, "ordinary people of common intelligence would understand that

13

by pleading guilty pursuant to Georgia'[s] First Offender Act, they remain under indictment until the charge [is] dismissed or an adjudication of guilt occur[s]." *Bonds*, 2017 WL 2991804, at *6.

Defendant Williams also argues that that the rule of lenity applies because the term "under indictment" is ambiguous. (Dkts. 45 at 6–7; 54 at 7.) "The rule of lenity holds that a law must speak in language that is clear and definite if it is to render something a crime." *United States v. Phifer*, 909 F.3d 372, 383 (11th Cir. 2018) (internal quotation marks omitted). "The simple existence of some statutory ambiguity, however, is not sufficient[,] . . . [r]ather, the rule of lenity applies only if there is a grievous ambiguity or uncertainty in the statute." *United States v. Puentes*, 803 F.3d 597, 610 (11th Cir. 2015) (internal quotation marks and citations omitted).

Defendant Williams cites the reasoning in *Bonds* as evidence of ambiguity, arguing that if the term "under indictment" was unambiguous, "it would not take an entire paragraph drawing multiple legal conclusions to make its meaning clear." (Dkt. 54 at 8.) But the simple fact that a court uses "an entire paragraph" to discuss a term's meaning does not render that term grievously ambiguous. There is no

14

ambiguity in how the statute defines "under indictment," nor, as applied here, whether Defendant Williams was "under indictment" for purposes of his First Offender Act plea. *See Bonds,* 2017 WL 2991804, at *7 (holding that "there is no 'grievous' ambiguity in the term 'under indictment' or, as discussed above, whether Defendant was 'under indictment' under Georgia law"). Because Defendant Williams was under indictment when he allegedly received a firearm on October 2, 2019, his motion to dismiss Count 1 of the indictment must be denied.

### B. Motion to Suppress Statements

Defendant Williams argues that the entire statement he made to the agents while in their vehicle in the parking deck of the courthouse should be suppressed. (Dkt. 44.) He breaks the statement into two parts—the 12 seconds before he was read his *Miranda* rights and everything thereafter. (*Id.* at 3.) As to the first 12 seconds, Defendant Williams argues that he was subject to interrogation when Agent McLeod told him the general topics that he wanted to discuss and that the agent "should have known that by telling Mr. Williams that he wanted to ask him about sources of firearms and drugs [that] Mr. Williams would reasonably respond by making incriminating statements on that topic."

15

(*Id.* at 4.)  As for the post-warning statements, Defendant Williams maintains that he requested a lawyer when he told the agent that he "really need[ed] help getting like a bond or something," (Gov't Ex. 1 at 01:10–01:16), and that, therefore, the questioning should have immediately stopped, (Dkts. 44 at 4–7; 54 at 10–11).

### 1. The Initial 12 Seconds

The Fifth Amendment requires courts to "exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010).  The entitlement to *Miranda* warnings "attaches only when custodial interrogation begins." *Id.* (internal quotation marks omitted).  Interrogation includes "express questioning" as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980) (footnote omitted).  "[T]he relevant inquiry in deciding whether words or actions constitute interrogation focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *United*

16

*States v. Hicks*, 546 F. Supp. 2d 1378, 1381 (N.D. Ga. 2008) (internal quotation marks omitted).

Here, Defendant Williams argues that Special Agent McLeod "should have known that by telling Mr. Williams that he wanted to ask him about sources of firearms and drugs [that] Mr. Williams would reasonably respond by making incriminating statements on that topic." (Dkt. 44 at 4.) Defendant Williams objects only to the Magistrate Judge's finding that "Agent McLeod specifically told [Defendant Williams] that these warnings would have to occur before they discussed the topics he mentioned (sources, firearms, and narcotics)." (Dkt. 54 at 10.) Defendant Williams emphasizes the fact that the agent did not specifically use the word "before" to make clear that *Miranda* had to come *before* the conversation. (Dkt. 50 at 3.) He claims this is "an important distinction" because it "cannot be assumed that Mr. Williams would automatically understand that *Miranda* warnings would need to occur prior to their conversation." (Dkt. 54 at 10.) The Court disagrees. As the Magistrate Judge noted, even without using the word "before," the agent made clear that he wanted to ask Defendant Williams some questions but he would

17

have to read him his *Miranda* rights first.[1]  Defendant Williams then chose to begin speaking before the agent could administer the proper *Miranda* warnings.  Nothing suggests Agent McLeod engaged in the functional equivalent of interrogation when he told Defendant Williams he would like to ask him questions about certain topics but he would first have to read him his *Miranda* warnings.  The initial 12 seconds of the conversation should not be suppressed.

### 2. The Remainder of the Conversation

Defendant Williams argues that the remainder of the conversation should be suppressed because Defendant Williams requested a lawyer. (Dkts. 44 at 4–7; 54 at 10–11.)  It is well settled that if a suspect requests a lawyer, further questioning must immediately cease.  *See Davis v. United States*, 512 U.S. 452, 458 (1994).  But the request for a lawyer must be unequivocal and unambiguous.  *Id.* at 459 (holding that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have

---

[1] The agent testified, "I advise him that I'd like to ask some questions about the investigation but—and that I would also answer questions that he might have, but because it was a back-and-forth, that I would have to read him his *Miranda* rights from a card because there would be a back-and-forth question and answer." (Dkt. 41 at 13.)

18

understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning" (emphasis in original)). Even a statement that directly mentions an attorney or lawyer, but cannot be reasonably construed as an unequivocal request for one, is insufficient. *United States v. Soleimani*, No. 1:18-cr-216, 2019 WL 7559295, at *19 (N.D. Ga. Sept. 25, 2019) (internal quotation marks omitted), *adopted by* 2019 WL 6002409 (N.D. Ga. Nov. 14, 2019).

Here, Defendant Williams contends that his statement about needing help getting a bond was an unambiguous and unequivocal request for a lawyer.[2] The Court disagrees. Defendant Williams did not mention a lawyer, let alone unequivocally request one. *See Soleimani*, 2019 WL 7559295, at *20 (collecting cases where questions or statements such as, "maybe I should talk to a lawyer," "could I call my lawyer," "I might want to talk to an attorney," and "Do you think I need a lawyer?"—along with many others of the same type—were not deemed sufficiently unequivocal or unambiguous). And Defendant Williams's statement falls

---

[2] When asked if he was willing to waive his rights and talk to the agents, Defendant Williams answered, "ah, yes. I just, I just want to like, like, get like how can I, I just really need help getting like a bond or something." (Gov't Ex. 1 at 01:10–01:16.)

19

short even when read in context of his earlier conversation with the agents where they told him that he would get a lawyer when he got to the courthouse. (Dkt. 54 at 11.) This is especially true given the fact the statement immediately followed the agent's instruction that Defendant Williams had "the right to consult with an attorney before questioning and to have one present during questioning." (Gov't Ex. 1 at 00:13–00:35.) At bottom, Defendant Williams's statement about needing help to get a bond does not constitute an unambiguous and unequivocal request for an attorney. The statements made by Defendant Williams after the agent read him his *Miranda* warnings should not be suppressed.

## IV. Conclusion

The Court **OVERRULES** Defendant's Objections (Dkt. 54), **ADOPTS** Magistrate Judge Christopher C. Bly's Report and Recommendation (Dkt. 52), and **DENIES** Defendant's Motion to Suppress Statements (Dkt. 28) and Motion to Dismiss Count 1 of the Indictment (Dkt. 30).

**SO ORDERED** this 5th day of April, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE