IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL ACTION |
| ) | NO. 1:20-CR-00085-MLB-CCB |
| LAZAVIER WILLIAMS ) | |
| _____ ) | |

### DEFENDANT'S SENTENCING MEMORADUM

COMES NOW, Defendant, Lazavier Williams, by and through undersigned counsel and files this memorandum to address the grounds supporting his request for a downward variance. Mr. Williams seeks a sentence of thirty months.

### Argument and Citation of Authority

Congress has set forth the factors a sentencing court must consider in determining a reasonable sentence, which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (summarizing 18 U.S.C. § 3553(a)).

The ultimate command of § 3553(a), however, is to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the sentencing purposes stated in the statute. *Id*. This parsimony provision requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing—just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Thus, although § 3553(a) requires the sentencing court to consider the applicable guideline range, it is only one of several factors, and it is the parsimony provision that serves as "the guidepost for sentencing decisions post-*Booker*." *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006).

"Extraordinary circumstances are not required to justify an outside of the guideline sentence." *Gall v. United States*, 552 U.S. 38, 47 (2007). After calculation of the custody range, it is within the Court's broad discretion to impose a more lenient (or more severe) sentence than the applicable range, "provided the resulting sentence is reasonable in light of the § 3553(a) factors." *United States v. Shelton*, 400 F.3d 1325, 1334 (11th Cir. 2005). In fact, according to the United States Sentencing Commission, in 2020, in the Northern District of Georgia, only 32.9 percent of defendants convicted of firearms offenses were sentenced within the guideline range. United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2020, Northern District of Georgia, Table 10. Downward variances were granted in 58.2 percent of such cases. *Id.* This is a case in which the

2

guideline range does not provide for a reasonable sentence and a downward variance is appropriate.

In this case, the custody guideline range is unduly harsh.  In 2018, Mr. Williams entered a First Offender guilty plea to one count each of Possession of Marijuana within a Drug-Free Commercial Zone, Possession of Marijuana with Intent to Distribute, and Possession of a Firearm during the Commission of a Crime. The sentence resulting from this First Offender plea was assessed one point toward Mr. Williams' criminal history score.  Mr. Williams was assessed two additional points because he was serving this probationary sentence at the time of the current offense.  These three points place Mr. Williams in criminal history category III rather than II.  Additionally, it is this same First Offender plea that subjects Mr. Williams to a base offense level of twenty-two under U.S.S.G 2K2.1(a)(3). Without this plea, Mr. Williams wouldn't be a prohibited person and would have a base offense level of twelve.[1]  Without Mr. Williams' 2018 First Offender plea, his adjusted guideline range would be 10-16 months.  While we aren't asking this Court to ignore Mr.

---

[1] Mr. Williams previously litigated a Motion to Dismiss based on the argument that he was not under felony indictment while serving a First Offender sentence and thus was not prohibited from receiving a firearm under 18 U.S.C. § 922(n). (Doc. 30, 45, 47, 49, 52, 54, and 55).  That motion was ultimately denied by this Court. (Doc. 55). Mr. Williams' maintains his prior arguments regarding § 922(n) and thus maintains that he is not a prohibited person.  However, based on this Court's prior ruling, this sentencing memo frames Mr. Williams' sentencing request as a downward variance.

Williams' prior conduct, we believe that the impact of the prior First Offender sentence creates a custody guideline range that is unduly harsh.

Mr. Williams was twenty-three years old at the time of this offense. He was a young father struggling to provide for his toddler and newborn. Just three years earlier his life was permanently altered when he was struck in the head by a stray bullet. This incident required him to spend two months in the hospital and many months undergoing therapy to relearn how to complete basic tasks. He is now blind and deaf on his left side and suffers from memory issues. The impact of this traumatic event combined with the pressures of being a new father ultimately led Mr. Williams to engage in conduct that he greatly regrets.

Prior to his arrest, Mr. Williams had been working to better himself by participating in the Clayton County Board of Health Fatherhood Program and volunteering for TIME-ER Human Relations Consulting Firm Leadership and Educational Center Inc. (Attachment A). As detailed in Attachment A, these programs focus on character development, pro-social behavior, violence prevention, substance abuse prevention, anger management, life skills, job readiness, time management skills, and educational goals and objectives. Upon his release, Mr. Williams intends to continue working with the Fatherhood Program. He plans to maintain employment through his father's business doing telecommunication and data wiring. He also plans to pursue training to become a barber.

Mr. Williams has now served just over twenty months in custody. He has missed countless milestones in his children's lives. His time away has been a difficult reminder not only of the consequences of his conduct in this case but also the consequences he will face if he were to ever engage in this type of conduct again. This period of incarceration has been approximately four times longer than his longest prior sentence. This Court must impose the minimum punishment needed to satisfy the purposes of sentencing—just punishment, deterrence, protection of the public, and rehabilitation of the defendant. A sentence of thirty months satisfies this command.

## Conclusion

For all of the foregoing reasons, the Court should downwardly vary and sentence Mr. Williams to thirty months.

Dated: This 11th day of November, 2021.

Respectfully submitted,

*/s/ Caitlyn Wade*
State Bar No. 259114
Attorney for Mr. Williams

FEDERAL DEFENDER PROGRAM, INC.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530
Caitlyn_Wade@fd.org